FILED
SUPERIOR COURT
GUAM

2014 MAY 12 PM 4: 17

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| MANU P. MELWANI AND ISHWAR P. HEMLANI,<br><br>               Plaintiffs,<br><br>v.<br><br>VASUDEV B. HEMLANI and the P.D. HEMLANI FOUNDATION, LTD.,<br><br>               Defendants. | CIVIL CASE NO. CV 1249-12<br><br>**DECISION AND ORDER** |

### INTRODUCTION

This matter came before the Honorable Arthur R. Barcinas on the 14th day of March, 2014, for hearing on the Defendants' Motion for Summary Judgment, Motion for Sanctions, and Motion to Dismiss. Attorney William R. Mann represented the Plaintiffs, and Attorney Rodney J. Jacob represented the Defendants. For the reasons set forth below, the Defendant's Motion for Summary Judgment is DENIED; the Defendant's Motion for Sanctions is DENIED; and the Defendant's Motion to Dismiss is DENIED.

### FACTUAL AND PROCEDURAL HISTORY

In 1997, P.D. and Radhi Hemlani established the Radhi Puran Trust as co-settlors and co-trustees. As originally written, the trust was to provide for the surviving spouse, and on the surviving spouse's passing, transfer the remaining trust assets to Radhi's Foundation, a charity

formed in 1990 to benefit unnamed charitable beneficiaries in Guam, the Commonwealth of the Northern Mariana Islands, and India.

P.D. Hemlani died in 2004. This made Radhi Hemlani the sole trustee of the Radhi Puran trust. Over the years, Radhi purported to amend the Trust several times, and eventually to revoke it. The parties to this case dispute the characterization of various properties of P.D. Hemlani and Radhi Hemlani as separate or community property, the nature of the Survivor's Trust and the Residuary Trust, Radhi's power to amend or revoke the Trust, issues of capacity and undue influence in the purported amendments and revocation, and other matters not directly relevant to this libel action.

In 2009, Vasudev B. Hemlani, who is one of P.D.'s nephews and a Defendant in this suit, filed suit in Hemlani v. Hemlani, CV 0506-09, against Manu P. Melwani and Ishwar P. Hemlani, the plaintiffs in this suit, among other defendants. The parties executed a Memorandum of Settlement on July 27, 2011. This settlement created the new P.D. Hemlani Foundation, Ltd. (PDHF), of which Vasudev B. Hemlani is the president and a director. In November 2011, Radhi Hemlani purported to create an estate plan, and in two cases before other judges of the Superior Court the parties dispute the legal propriety of her action and the property transfers that resulted from it.

In the first case, Kishore Hemlani, also a nephew of P.D. Hemlani, filed a petition in the Superior Court of Guam on November 7, 2011 to appoint a guardian for Radhi Hemlani. Vasudev moved to intervene in that action, and the Guardianship court granted the intervention motion. The Court appointed the Public Guardian to serve as Radhi's Guardian, and issued related further orders over the course of 2012.

In the second case, on June 25, 2012 Kamlesh Hemlani, another nephew of P.D. Hemlani, filed suit against multiple parties in case CV 0758-12, including Manu, Ishwar, Vasudev, and PDHF. Kamlesh alleged that Manu and Ishwar had inappropriately diverted assets from the trust, and that Vasudev and PDHF had failed to adequately protect the trust. Vasudev and PDHF filed an Answer on August 14, 2012, disputing Kamlesh's allegation against Vasudev and PDHF, but agreeing with his allegation against Manu and Ishwar. The court eventually dismissed the case and entered judgment on September 6, 2013. Kamlesh's motion for reconsideration is pending.

In October 2012, Manu Melwani purported to transfer certain real properties to Radhi Hemlani's elderly siblings, in accordance with Radhi's estate plan of November 2011. The transfers were done by deed of gift, while reserving life estates in the properties to Radhi. After learning of the transfers, on October 17, 2012, Vasudev Hemlani, as President and a Director of PDHF, caused PDHF to submit a document entitled: "Notice of Recordation of Further Fraudulent Transfers" (Notice) to the court with jurisdiction over the case Kamlesh Hemlani filed. The next day, PDHF recorded the document with the Department of Land Management (DLM) as Document No. 843030.

The Notice alleged that, without the knowledge or consent of the appointed Public Guardian and in violation of the guardianship court's orders, the Radhi Puran Trust improperly transferred the following properties to Radhi Hemlani's siblings: "(1) Lot No. 93, Tract No. 13105, Municipality of Tamuning, to Parmanand K. Melwani (Defendant Manu Melwani's father); (2) Apartment No. 1103, Agana Beach Condominiums, to Defendant Jethmal K. Melwani (Defendant Manu Melwani's uncle); and (3) Apartment No. 1101, Agana Beach Condominiums, to Padi Kelly Daryanani (Manu Melwani's aunt)." Pl.'s Compl., Ex. 1. The

Notice further alleged that, "The fraudulent transfers are also clearly to the detriment of the beneficiaries of the Trust; Radhi herself and PDHF (the charitable organization charged with carrying out the charitable intentions of Radhi and her late husband). The transfers are yet another step in the fraudulent scheme by Manu Melwani, Don Hemlani and their aiders and abettors to enrich themselves with assets that were ultimately supposed to go to charity." Id.

On November 7, 2012, Manu Melwani and Ishwar Hemlani filed the present suit against Vasudev B. Hemlani and PDHF, asserting that the Notice filed with the DLM was false and libelous, that the defendants were specifically aware of this falsity, and that the Notice had been filed maliciously and with the intention to harm Manu and Ishwar.

On December 5, 2012, the defendants filed a Motion for Summary Judgment, Motion for Sanctions, and a Motion to Dismiss the Complaint. The Memorandum in support was later amended on November 26, 2012. The plaintiffs filed an Opposition to the motions on January 1, 2014, and the plaintiffs filed a reply on January 24, 2014. Oral argument occurred on March 14, 2014.

The defendants moved for summary judgment on the basis of the Citizen Participation in Government Act (CPGA), which is a Guam statute intended to help defendants defeat strategic lawsuits against public participation (Anti-SLAPP statute). The motion for sanctions was premised on a successful motion for summary judgment under the CPGA, as the CPGA allows successful defendants to recover sanctions. The motion to dismiss was pleaded in the alternative, on the basis of the litigation privilege and Guam Rule of Civil Procedure 12(b)(6).

## DISCUSSION

Due to the far-ranging nature of the parties' submitted briefs, oral arguments and rhetorical strategies used therein, the Court finds it worthwhile to clarify exactly what is not and

is at issue in this Decision and Order. The Court is not adjudicating title to the real properties. It is not attempting to uncover any intent of the trust settlors. The Court does not address any alleged incapacity or undue influence on Radhi Hemlani. It is not examining any alleged impropriety, constitutional or otherwise, of any decisions of the guardianship court or actions taken by the Public Guardian. The Court is not adjudicating a fraud suit. While the question may arise at future stages of libel litigation, the Court does not today address the questions of truth or falsity, or malice, nor weigh in on any damages to the plaintiffs that may have arisen from the alleged libel. Today, the Court adjudicates the following: the defendants' asserted absolute privilege based on the Citizen Participation in Government Act, the defendants' motion for sanctions that is premised on the CPGA, and the defendants' motion to dismiss based on the litigation privilege.

# I. Jurisdiction

The jurisdiction of this Court is uncontested by the parties. This Court has subject-matter jurisdiction under 7 GCA § 4101, the statute establishing the Superior Court of Guam, and personal jurisdiction over the defendants on the basis that they are, respectively, a natural person who resides on Guam, and an artificial person incorporated under the laws of Guam.

# II. Citizen Participation in Government Act

## A. Purpose, Procedure, and Scope

The defendants move for summary judgment on the basis of the Citizen Participation in Government Act (CPGA), which is a Guam statute intended to help defendants defeat strategic lawsuits against public participation (Anti-SLAPP statute), which burden the exercise of their constitutional rights of speech and petition. *See* 7 CGA § 17101 et seq. (2012). See also Guam Greyhound, Inc. v. Brizill, 2008 Guam 13 ¶ 9 ("[T]he CPGA was intended to cover 'Strategic

Lawsuits Against Public Participation or SLAPPs.' According to the Guam Legislature, SLAPP suits are lawsuits that are 'typically dismissed as unconstitutional, but not before the defendants are put to great expense, harassment, and interruption of their productive activities.'")

7 GCA § 17106 establishes the procedures to be used when a defendant pleads the CPGA. The pleading used is a motion for summary judgment. 7 GCA § 17106(a) (2012). But despite the pleading being one a motion for summary judgment, when a court adjudicates a CPGA defense discovery is suspended, and the court decides the motion based on the facts contained in pleadings and affidavits. 7 GCA §§ 17106(b), 17106(d) (2012). The party who responds to the motion has the burden of production and persuasion that the claim is not one that is "based on, relates to or is in response to any act of the moving party in furtherance of the moving party's rights as described in § 17104," and must do so by clear and convincing evidence. 7 GCA §§ 17105, 17106(c), 17106(e) (2012). Costs of litigation and monetary sanctions are available to a victorious moving party. 7 GCA § 17106(g) (2012).

Although the moving party's appropriate pleading is a motion for summary judgment, in Enriquez v. Smith the Supreme Court ruled that the trial court had committed reversible error by adjudicating the defendant's motion to dismiss, granting it and dismissing the case, and thus never addressing the defendant's CPGA motion for summary judgment. Enriquez v. Smith, 2012 Guam 15 ¶ 17. This was because the CPGA offers relief, in the form of monetary sanctions, that were not available in the motion to dismiss. Id. The Supreme Court then clarified the procedural posture when a CPGA motion for summary judgment is pleaded alongside another dispositive motion:

> "In instances where a trial court is presented with any motion to dispose of a claim, even if pled alternatively, that raises the immunity from liability described in the CPGA, the trial court should first determine whether the claim actually falls within the scope of the CPGA. If the claim does, then the trial court must treat the

motion to dispose of the claim as one for summary judgment and follow the procedures required by 7 GCA § 17106. Only after the trial court determines the motion to dispose of any claims under the CPGA should it then proceed to determine any other motions to dispose of any other claims."

Enriquez v. Smith, 2012 Guam 15 ¶ 18.

As applied to this case, this Court must first determine whether the plaintiffs' claims fall within the scope of the CPGA. Second, if one or more of them are, the Court must adjudicate the defendants' CPGA motion for summary judgment, using the procedures required by 7 GCA § 17106 (2012). Third, if necessary, the Court must adjudicate any other dispositive motions.

In 7 GCA § 17102, the Legislature made Legislative Findings and Declaration of Purposes setting forward its purpose in enacting the Citizen Participation in Government Act of 1998. 7 GCA § 17102 (2012). The findings stated that the framers of the United States Constitution recognized citizen participation in government as "an inalienable right essential to the survival of democracy," that "the communications, information, opinions, reports, testimony, claims and arguments provided by citizens to their governments are essential to [good government]," and that strategic lawsuits against public participation have been or are being filed against citizens, businesses, and organizations for involving themselves in public affairs. 7 GCA § 17102 (2012).

In this case, the plaintiffs have alleged that the defendants, by filing the "Notice of Recordation of Further Fraudulent Transfers" (Notice) with the Department of Land Management (DLM), made a statement that "is libelous on its face in that it exposes [the plaintiffs] to hatred, contempt, ridicule or obloquy, causes them to be shunned or avoided, and has a natural tendency to injure them in their occupations." Pl.'s Compl., p. 2, ¶ 11. Moreover, the Complaint alleged that "Manu Melwani has suffered loss of his reputation personally and as a businessman, embarrassment, and extreme mental and emotional distress, all to his general

damage," and alleged that Ishwar Hemlani, also known as Don Hemlani, has also so suffered. Pl.'s Compl., p. 3, ¶¶ 17-18. Translating the factual allegations of liberal pleading to legal causes of action, and the Complaint alleges facts that arguably constitute libel, intentional or negligent infliction of emotional distress, and possibly false light invasion of privacy.

The Supreme Court has addressed a case with just those claims, to which the defendant responded with a CPGA defense, in Enriquez v. Smith. In Enriquez, Elsie Smith complained to the Guam Board of Examiners for Dentistry that Dr. Hugh Sule, while performing a root canal, had left her in the care of a dental auxiliary, and that after the root canal she suffered pain and swelling of her face and eye. Enriquez v. Smith, 2012 Guam 15 ¶ 2. She asked to view photographs of the dental auxiliaries, and through these photographs identified Salvador Enriquez as the auxiliary who had performed her root canal, whereupon the Dental Board opened an investigation of Sule and Enriquez. Id. Enriquez maintained that he had not performed the root canal, and responded by suing Smith in the Superior Court for libel, slander, false light invasion of privacy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Id. at ¶ 3. The trial court adjudicated Smith's motion to dismiss first, and granted it, and on that basis passed on adjudicating the CPGA motion for summary judgment. Id. The Supreme Court remanded the case to the trial court so it could adjudicate the CPGA defense. Id. at ¶ 21. While the Supreme Court did not affirmatively judge the CPGA defense, nor did it rule that Mr. Enriquez's claims did not "fall within the scope of the CPGA." Id. at ¶¶ 18, 21.

In Guam Greyhound Inc. v. Brizill, the Supreme Court likewise treated a defamation claim as within the scope of the CPGA, affirming the grant of a motion for summary judgment based on the CPGA. Guam Greyhound, Inc. v. Brizill, 2008 Guam 13. On a Guam radio

broadcast, the defendant Dorothy Brizill spoke against a ballot initiative to legalize slot machine gambling at the Guam Greyhound track. The plaintiff Guam Greyhound, Inc. sued her for defamation, and Brizill responded by pleading the CPGA. The trial court granted the motion for summary judgment, and the Supreme Court affirmed.

Both Enriquez and Guam Greyhound contained defamation claims, and in both cases the Supreme Court treated the CPGA as an appropriate response. Looking at the case at bar, the plaintiffs Manu Melwani and Ishwar Hemlani have argued that the defendants Vasudev Hemlani and PDHF libeled them by publishing the Notice with the DLM. This is an analogous factual claim, with a corresponding analogous legal cause of action, to those in Enriquez and Guam Greyhound. Accordingly, the Court finds that the plaintiffs' "claim actually falls within the scope of the CPGA." See Enriquez v. Smith, 2012 Guam 15 ¶ 18. This does not necessarily mean the defendants ought to win their motion for summary judgment, only that libel claims are sometimes used as the sort of strategic litigation against public participation that the Legislature expressed concern about when passing the CPGA. See 7 GCA § 17102 (2012). This finding that the claim falls within the scope of the CPGA triggers § 17106's procedures, which are atypical and deviate from the Guam Rules of Civil Procedure, and require adjudication of the CPGA motion for summary judgment before adjudication of any other dispositive motion. See 7 GCA § 17106 (2012); Enriquez at ¶ 18.

The substantive section of the CPGA reads as following:

§ 17104. Immunity.
Acts in furtherance of the Constitutional rights to petition, including seeking relief, influencing action, informing, communicating and otherwise participating in the processes of government, shall be immune from liability, regardless of intent or purpose, except where not aimed at procuring any government or electoral action, result or outcome.

7 GCA § 17104 (2005).

The Supreme Court has interpreted the statutory provision to contain two distinct parts: the "petitioning provision" and the "sham exception." Guam Greyhound, Inc. v. Brizill, 2008 Guam 13 ¶ 11. Analyzing the petitioning provision requires "an objective test of whether a reasonable person would conclude from looking at the acts that the acts involved petitioning the government." Id. at ¶ 34. In contrast, "The sham exception from 17104 requires a subjective analysis." Id. at ¶ 39. The responding party has to prove, by clear and convincing evidence, either that the moving party's act did not involve petitioning the government, or that the petition was merely a sham petition: "The sham exception contained in section 17104 also does not protect 'persons [who] use the governmental process-as opposed to the outcome of that process-as a…weapon.'" Id. at ¶ 39 (quoting City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 380 (1991)).

Applying the first part of § 17104, the petitioning provision, requires understanding what "in furtherance of the Constitutional rights to petition" means. 7 GCA § 17104 (2012). The statute is quite broad: "[I]ncluding seeking relief, influencing action, informing, communicating, and otherwise participating with government bodies, officials, or employees or the electorate." 7 GCA § 17102(3) (2012). Furthermore, the Supreme Court has interpreted the statute to reach even some acts that are not constitutionally protected. In Guam Greyhound, the Supreme Court ruled that the GCPA's protections extend further than the constitutional requirement of the "actual malice" standard from New York Times v. Sullivan, 376 U.S. 254 (1964). Guam Greyhound, Inc. v. Brizill, 2008 Guam 13 ¶ 31-32. In other words, the Legislature has the right to provide more protection against defamation lawsuits to defendants engaging in speech or petition than the United States Constitution mandates, and the Supreme Court interpreted the CPGA as the Legislature doing so. See id. at ¶ 32.

## B. Protected Petition under the CPGA

The Legislature's Legislative Findings and Declaration of Purposes declared that the purpose of the CPGA was to protect "the right to petition the government for redress of grievances in the First Amendment to the U.S. Constitution." See 7 GCA § 17102(a)(1) (2012). Since the Legislature specifically mentioned the federal Constitution, the Court will look to federal constitutional case law to attempt to determine the scope of that right. "'The right to petition extends to all departments of the Government,' and...'[t]he right of access to the courts is...but one aspect of the right of petition.'" BE&K Const. Co. v. NLRB, 536 U.S. 516, 525 (2002) (quoting California Motor Transport co. v. Trucking Unlimited, 404 U.S. 508, 511 (1972)). However, even actions that fall into categories that are accepted as petition are not always protected by the First Amendment. See Bill Johnson's Restaurants, Inc., v. NLRB, 461 U.S. 71, 743 (1983) ("[B]aseless litigation is not immunized by the First Amendment right of petition"); see also Borough of Duryea, Pa. v. Guarnieri, 131 S. Ct. 2488, 2501 (2011) (holding that if a government employee filing a grievance against his public-sector employer with his labor union did not do so as "a matter of public concern," then the conduct was not protected by the First Amendment right of petition). Petition is vital to the health of the political system because it enables citizens to "persuade elected officials of the wisdom or error of policy proposals." U.S. v. Kincaid-Chauncey, 556 F.3d 923, 941-42 (9th Cir. 2009), abrogated on other grounds, U.S. v. Garrido, 713 F.3d 985 (9th Cir. 2013). Just because an exercise of the right of petition did not achieve the petitioner's goals does not mean the right to petition was denied. See Smith v. Arkansas State Highway Emp., Local 1315, 441 U.S. 463, 464-65 (1979). Reading Kincaid-Chauncey together with Smith, the federal courts do not conceive of all interactions between citizens and the government as petitions. Rather, petitions are requests

from a citizen or citizens to a government official or entity, asking the official or entity to take or refrain from an action, where the governmental official or entity has discretion to grant or deny the request. This understanding corresponds with standard legal meaning of the term. "Petition, n. 1. a formal request, addressed to a person or body in a position of authority, soliciting some benevolent exercise of power." Webster's Pocket Legal Dictionary 196 (3d ed. 2007).

The plaintiffs in this case, Manu Melwani and Ishwar Hemlani, acknowledge that the filing of the Notice with the Superior Court was protected by the litigation privilege. Pl.'s Opposition, p. 13, ll. 23-25. They only allege libel with regard to the filing of the Notice with the DLM. Thus, it is only necessary to analyze whether the filing with the DLM, and not the filing with the court, was protected petition under the CPGA. The defendants, Vasudev Hemlani and PDHF, argue that the Notice filed with the DLM was a lis pendens to the ongoing litigation over the real estate held by Radhi's Trust. A lis pendens, Latin for "pending suit," is a document filed with a land registry to provide constructive notice to potential purchasers that title to the land in question is or is about to be litigated and that any title purchased is subject to the outcome of the litigation. See e.g. 54 CJS Lis Pendens §§ 4-39 (1987). If the document is not filed, the purchaser does not have constructive notice, and if he is a bona fide purchaser for value he will not be bound by the litigation to which he was not party. See e.g. Pelowski v. Taitano, 2000 Guam 34.

Guam's lis pendens statute, 7 GCA § 14103, was based on California Code of Civil Procedure § 409 (the CCP has since been modified, such that the California's current lis pendens statute is located at CCP § 405.24). 7 GCA § 14103 (2012). The statute reads:

> In an action affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing

an answer, when affirmative relief is claimed in such answer, or at any time afterwards, may record in the Department of Land Management, a notice of the pendency of the action containing the names of the parties and the object of the action or defense, and a description of the property affected thereby. From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.

7 GCA § 14103 (2012).

For the Notice filed with the DLM to be absolutely privileged under the CPGA as a lis pendens, two things must be the case. First, filings of lis pendens with the Department of Land Management must qualify as petition by being the sort of act that is intended to influence a discretionary governmental function. Second, if filing a lis pendens is protected petition, then the document actually filed must correspond with the statutory requirements of lis pendens. The second prong does not need to be analyzed if the first prong is not met.

In arguing that the filing of a lis pendens counts as protected petition and is covered by Anti-SLAPP statutes, the defendants cite two California cases, Manhattan Loft, LLC v. Mercury Liquors, Inc., 173 Cal.App.4th 1040, 1050 (2nd Dist. 2009) and Salma v. Capon, 161 Cal.App.4th 1275, 1285 (1st Dist. 2008). California's Anti-SLAPP statute defines an "act in furtherance of a person's right of petition'" to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16, subd. (e). The California courts interpreted filings of lis pendens to fall into this definition. Manhattan Loft, 173 Cal.App.4th at 1050; Salma v. Capon, 161 Cal.App.4th at 1285.

The Court is persuaded that lis pendens are protected petition...in California. In Guam, the matter appears to be one of first impression. Moreover, California's anti-SLAPP statute is atypically broad, moreso than the Citizen Participation in Government Act. The "petitioning provision" of 7 GCA § 17104 reads as follows: "Acts in furtherance of the Constitutional rights to petition, including seeking relief, influencing action, informing, communicating and otherwise participating in the processes of government, shall be immune from liability." 7 GCA § 17104 (2012). While this definition is also broad, it is not as broad as California's. In particular, Guam's statute lacks a specific inclusion of statements made in connection with an issue under consideration, as opposed to statements made before a governmental proceeding itself.

Nor has Guam case law yet interpreted the reach of the CPGA to extend to non-discretionary, purely ministerial duties of government. Prior cases which granted a movant's dispositive CPGA motions have done so on the basis that the movant had been attempting to influence discretionary activities, requiring judgment by governmental actors or the electorate as a whole. In Enriquez v. Smith, the defendant complained to the Guam Board of Examiners for Dentistry about substandard dental treatment, and in response the Board chose to open an investigation and, based on what they learned, file a disciplinary case. Enriquez v. Smith, 2012 Guam 15 ¶ 2. In Guam Greyhound Inc. v. Brizill, the defendant made arguments on the radio against a proposed referendum, a procedure by which the entire electorate acts as a legislature weighing the pros and cons of a policy proposal. See Guam Greyhound Inc. v. Brizill, 2008 Guam 13 ¶ 2. Prior Superior Court cases have also granted CPGA motions for summary judgment on the basis of requests for discretionary, not ministerial, government actions. See Government of Guam v. Schiff, CV0055-13 (Super. Ct. Guam D&O October 23, 2013)

(dismissing a suit against a defendant who attended meetings of the Guam Board of Allied Health Examiners, asked it questions, and complained about Board actions); see also Busker Alley, Inc. v. Kasperbauer, CV0055-13 (Super. Ct. Guam D&O September 30, 2013) (granting dismissal based on the CPGA against claims that the defendant tried to persuade neighbors and government officials that the proposed development of a bar in a residential neighborhood was illegal and immoral, but not dismissing claims that the defendant committed trespass, nuisance, and interfered with public access to the ocean shore); see also Able Industries of the Pacific v. Raymonde Santos, CV0953-10 (Super. Ct. Guam D&O October 6, 2010) (dismissing a suit for breach of contract based on a CPGA defense, where the suit was in retaliation for a federal complaint filed by the defendant); see also Bank of Hawaii v. Dearth, CV1332-08 (Super. Ct. Guam D&O January 29, 2010) (dismissing a counterclaim that alleged that the opposing party statement to the police that the counterclaimants were passing forged checks was baseless slander).

## C. Lis Pendens under the CPGA

The Defendants in the present matter, Vasudev B. Hemlani and P.D. Hemlani Foundation (PDHF), argue that the document titled "Notice of Recordation of Further Fraudulent Transfers" (Notice) was a lis pendens filed pursuant to litigation over Radhi's Trust, the real estate owned by Radhi's Trust, and the guardianship of Radhi Hemlani. Merely for purposes of the present analysis, the Court will assume for the time being that the document was a valid lis pendens. Guam's lis pendens statute, 7 GCA § 14103, reads as follows:

> § 14103. Notice of Lis Pendens.
> In an action affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing an answer, when affirmative relief is claimed in such answer, or at any time afterwards, may record in the Department of Land Management, a notice of the pendency of the action containing the names of the parties and the object of the

action or defense, and a description of the property affected thereby. From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.

7 GCA § 14103 (2012).

The statute instructs any litigant wishing to provide constructive notice of litigation over real property what exactly to do. Only if such constructive notice is provided will the litigant be able to ensure that the property interest being litigated will be valid against third parties, who otherwise may well be bona fide purchasers for value. See Pelowski v. Taitano, 2000 Guam 34.

The Department of Land Management (DLM), where the litigant is instructed to file the lis pendens, is established by 21 GCA § 60101 *et seq*. The DLM's function as the depository of land title registrations is established by 21 GCA § 60311 *et seq*. When acting as the depository of records, the Legislature directs the DLM to fulfill its duties in specific, nondiscretionary ways. See 21 GCA § 60315 (2012) ("When any document authorized by law to be recorded is deposited in the recorder's office for record...*[h]e shall record it* without delay,") (emphasis added); see also 21 GCA § 60316 (2012) ("The recorder *shall endorse* upon each document the book and page in which it is recorded") (emphasis added); see also 21 GCA § 60317 (2012) ("The recorder *shall record* by legible handwriting, by typewriting, or by photographic reproduction process") (emphasis added). In its functions acting as the recorder of titles and deeds, the Department is given non-discretionary, ministerial duties to operate the land recording system. It is not given discretion to make determinations of title to real estate, nor to determine the truth or falsehood of any documents presented to it for recording. It simply processes and records the documents filed with it.

In contrast, in other of its functions, the DLM is given discretionary duties that require careful judgment. For example, the DLM is authorized, after public hearing and with legislative concurrence, to reserve government real property for future use. 21 GCA § 60105 (2012). The Director of the DLM establishes uniform procedures for the survey of lands, but what exactly these procedures are to be is left to his discretion and judgment. See 21 GCA § 60501 (2012). The Lands Records Division studies patterns of land ownership in order to make reports in order to identify where, in its judgment, the public may be able to establish a legally sufficient claim for ownership. See 21 GCA § 60702.

As stated above, a dispositive motion under the CPGA is treated as a motion for summary judgment. 7 GCA § 17106(a) (2012). The responding party has the burden of proof of production and persuasion, and must do so by clear and convincing evidence. 7 GCA § 17106(c), (e) (2012). The responding party has to prove either that the moving party's act, which gave rise to the responding party's claim, either was not a petition or was a sham petition. 7 GCA § 17104; Guam Greyhound, Inc. v. Brizill, 2008 Guam 13 ¶ 11.

A motion for summary judgment is a pretrial proceeding to determine whether the discovered evidence reveals that there is any "genuine issue as to any material fact" that requires a jury trial. GRCP 56(c); F.R.Civ.P. 56(c)(2). If there is not, and thus the moving party is entitled to judgment as a matter of law the judge shall grant the judgment without a jury trial. Id. The ordinary procedure at a motion for summary judgment is to construe the facts in the light most favorable to the non-moving party. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). However, with regard to CPGA cases, the Legislature opted against the ordinary procedure for a summary judgment motion, and instead created a procedure that would facilitate the expedited dismissal of unconstitutional strategic lawsuits against public

participation. See 7 GCA §§ 17102, 17106 (2012). The summary judgment motion does not wait until after a potentially long and expensive discovery period, but instead is adjudicated "based on the facts contained in the pleadings and affidavits filed." 7 GCA § 17106(b), (d) (2012). And instead of the evidence being viewed in the light most favorable to the non-moving party, under the CPGA the responding party has the burden of proof by clear and convincing evidence. 7 GCA § 17106(c), (e) (2012). Nevertheless, summary judgment is a factual determination under the Guam Rules of Civil Procedure, just as it is in the Federal Rules. The CPGA does not turn a factual determination into a legal one, as § 17106 still directs the court to make a factual determination based on the evidence submitted. See 7 GCA § 17106(c), (d), (e) (2012).

The parties to this lawsuit have a live dispute over whether or not the filing of the Notice with the DLM was a filing of lis pendens. Contrast Def.'s Reply, pp. 8-9, with Pl.'s Opposition p. 8-10. But this dispute is legal, not factual. The parties agree on the text of the Notice that was submitted to the Superior Court and then to the DLM. Compare Pl.'s Compl., Ex. 1, with Def.'s Decl., Ex. B. The parties also agree on the dates of the filings: October 17, 2021 to the Superior Court, and October 18, 2012 to the DLM. Compare Pl.'s Compl., pp. 1-2, with Def.'s Amended Memorandum of Points and Authorities, p. 8. What they disagree on is what the uncontroverted actions mean for the Defendants' motion for summary judgment against the Plaintiffs' claims of libel and infliction of emotional distress. As a result, there is no genuine dispute of material fact regarding the content of the Notice or act of filing it with the DLM. In other words, since the parties agree on the precise factual question that is material to the legal defense, and all evidence submitted in the pleadings and affidavits supports that conclusion, the Court is clearly

convinced of the text of the Notice of Recordation of Further Fraudulent Transfers, and that the Notice was filed with the DLM on October 18, 2012.

As stated above, for the Defendants to win a dismissal of this suit based on their argument that the Notice filed with the DLM was a lis pendens, the Court must agree with them both that first, a filing of lis pendens is petition protected by the CPGA, and second, the document was a lis pendens. However, as stated above, the meaning of petition, and thus the scope of the CPGA, is not so broad as to encompass any and all interactions between citizens and the government. Instead, petition refers to requests for discretionary action requiring judgment. It is possible to petition all three branches of government. BE&K Const. Co. v. NLRB, 536 U.S. 516, 525 (2002). Speech made to the electorate, when it acts as the legislature considering adopting a referendum, also counts as protected petition. See Guam Greyhound Inc. v. Brizill, 2008 Guam 13 ¶ 2. But no court in Guam has ruled that purely ministerial, non-discretionary duties of government employees, such as the duty of the Recorder and his employees to record titles, deeds, lis pendens, and other documents relating to land ownership, automatically and without determining the validity of the asserted claims, counts as a protected petition under the CPGA, and this Court shall not do so now. In contrast, courts in California have ruled that filings of lis pendens are protected under California's Anti-SLAPP statute. Manhattan Loft, 173 Cal.App.4th at 1050; Salma v. Capon, 161 Cal.App.4th at 1285. But these California cases do not act as persuasive authority for courts in Guam, because of the dissimilarity of California and Guam's Anti-SLAPP statutes. In particular, California includes as protected petition "any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Cal. Civ. Proc. Code § 425.16, subd. (e). Guam's statute is not

nearly so broad, instead only referring to "Acts in furtherance of the Constitutional rights to petition, including seeking relief, influencing action, informing, communicating and otherwise participating in the processes of government." 7 GCA § 17104 (2012). The Court finds that filing a lis pendens is not an act of protected petition under the CPGA, and thus the Defendants' motion for summary judgment cannot succeed on that basis.

Since the Court has ruled that, even assuming the Notice was a lis pendens, filing it with the DLM was not an act of protected petition under the CPGA, it is not necessary to analyze the second step, whether the Notice qualifies as a lis pendens, in order to dispose of the Defendants' motion for summary judgment based on the CPGA.

The Defendants also argue that, whether or not the Notice filed with the DLM counts as a lis pendens, the act of filing was still an act of petition. Def.'s Reply, pp. 3-4. But the question of the precise legal meaning of the document filed, whether it was a lis pendens or not, is not the relevant one for purposes of the present analysis. Instead, the question is whether filing title documents with the DLM is an act of petitioning the DLM. The answer, as above, is no. This is the case no matter if the document was a lis pendens, a deed of transfer, purchase, or sale, a plat map, a record of a lien or judgment, or any other document asserting an interest in real property. The real question at this stage is not the nature of the document recorded, but the nature of the Recorder's action in accepting the document for recording. Since that acceptance is purely ministerial, not discretionary, whatever the nature of the Notice, filing it was not protected petition under the CPGA.

Because filing a document for recording with the Department of Land Management is not protected petition, the Court concludes that the filing of the Notice of Recordation of

Further Fraudulent Transfers was not a privileged act under the Citizen Participation in Government Act.

### D. Sanctions under the CPGA

The CPGA instructs courts to do the following:

> (g) the court shall award a moving party who is dismissed, without regards to any limit under Guam law:
> (1) costs of litigation, including reasonable attorney and expert witness fees, incurred in connection with the motion; and
> (2) such additional sanctions upon the responding party, its attorneys or law firms as it determines will be sufficient to deter repetition of such conduct and comparable conduct by others similarly situated;

7 GCA § 17106(g), (h) (2012).

The Defendants have so moved for costs of litigation and sanctions against the Plaintiffs. Def.'s Notice of Mot, p. 1, ll. 17-24. But such a motion is predicated upon a dismissal under the CPGA. Without the underlying grant of the Defendants' motion for summary judgment, the court has no authority to grant costs or sanctions to the Defendants.

## II. Litigation Privilege

### A. Lis Pendens under the Litigation Privilege

In the alternative, the Defendants move to dismiss based on the litigation privilege. The motion to dismiss is made on the basis of Guam Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Def.'s Notice of Mot., pp. 1-2. The Defendants argue that the filing with the Department of Land Management (DLM) of the allegedly libelous publication, the "Notice of Recordation of Further Fraudulent Transfers," (Notice) was covered by the litigation privilege. Because the Plaintiffs do not make any accusation based on any event other than the filing with the DLM, the Defendant's argue the Court must dismiss the complaint for failure to state a claim. The Plaintiffs vigorously contest whether the litigation privilege

applies to the filing of the Notice with the DLM, but in their Opposition to the Motion to Dismiss they do not make any argument that even if the Court rules that the Notice was privileged, that their complaint should not be dismissed. The Court agrees. If the Notice was privileged, the Court must dismiss the complaint, there being no other alleged harmful act upon which the complaint was based.

Guam's litigation privilege is codified at 19 GCA § 2105, and reads, in relevant part, as follows: "§ 2105. Privileged Communications. A privileged publication is one made:...(b) In any (1) legislative or (2) judicial proceedings, or (3) in any other official proceeding authorized by law." 19 GCA § 2105. Guam's statute is based on Section 47 of California's Civil Code, and thus California precedent is especially relevant. See Macris v. Richardson, 2010 Guam 6 ¶ 21. The Plaintiffs acknowledge that the filing of the Notice with the Superior Court on October 17, 2012 is privileged. Pl.'s Opposition, p. 13. The Plaintiffs only contest the refilling of the Notice with the DLM on October 18, 2012.

To support their argument that lis pendens are covered by the litigation privilege, the Defendants cite a California case, Albertson v. Raboff. In Albertson, the Supreme Court of California, interpreting the California statute that forms the basis of Guam's litigation privilege, ruled that: "publication of the pleadings is unquestionably clothed with absolute privilege, and we have concluded that the republication thereof by recording a notice of *lis pendens* is similarly privileged." Albertson v. Raboff, 46 Cal.2d 375, 379, (1956) (emphasis original).

The Plaintiffs do not contest that ruling in Albertson. Pl.'s Opposition, p. 9. But they characterize the case's meaning thus:

> A lis pendens is merely the republication of a Complaint containing a claim to title or an interest in real property. The fact that the real property claim ultimately does not prove successful at trial should not strip the lis pendens of its privileged nature. This principle, however, presupposes that there are pleadings in existence

in which the party recording the lis pendens has asserted a claim to the title or the right of possession of real property.' 7 GCA § 14103.

Def.'s Opposition, pp. 9-10.

The Plaintiffs further argue that the circumstances in which the litigation privilege is appropriate are limited by citing and quoting another California case, Rothman v. Jackson. In Rothman, the California Court of Appeal stated that the litigation privilege applied to: "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." Rothman v. Jackson, 49 Cal.App.4th 1134, 1141 (Cal. App. 1996) (quoting Silberg v. Anderson, 50 Cal.3d 205 (1990)). The Plaintiffs emphasized that the Defendants Vasudev Hemlani and P.D. Hemlani Foundation (PDHF) were defendants, not plaintiffs, in the case filed by Kamlesh Hemlani, and Vasudev and PDHF submitted the Notice to the court adjudicating the case filed by Kamlesh Hemlani, before filing it at the DLM. Pl.'s Opposition, p. 12. The Plaintiffs also argue that in the Answer the Defendants filed in that case, there was no request made regarding any claim of title, and accuse the Defendants of having no other purpose besides clouding title to the properties and libeling the Plaintiffs. Id.

In response, the Defendants argue that a proper application of the Rothman test shows that their action was covered by the litigation privilege. In contrast to the Plaintiffs' accusations that the Plaintiffs did not initiate the litigation and thus there were no "objects of the litigation," and that the filing of the Notice with DLM had no connection to the action, the Plaintiffs argue that the Rothman court itself stressed that the "communicative act" must "function as a necessary or useful step in the litigation process and must serve its purposes." Def.'s Reply, p. 9 (quoting Rothman at 1146). They argue that their efforts in the "Kamlesh Action and the

Guardianship Action both involved efforts to set aside fraudulent conveyances, to establish constructive trusts over real estate, and other efforts to establish the Trust's title to and possession of the Properties." Id. They say filing the Notice as a lis pendens was done to provide constructive notice to potential purchasers, and thus to protect the Trust's and charity's rights in the Properties against third parties. See id.

**B. Requirements of a Valid Lis Pendens**

Guam's lis pendens statute, 7 GCA § 14103, reads as follows:

> In an action affecting the title or the right of possession of real property, the plaintiff, at the time of filing the complaint, and the defendant, at the time of filing an answer, when affirmative relief is claimed in such answer, or at any time afterwards, may record in the Department of Land Management, a notice of the pendency of the action containing the names of the parties and the object of the action or defense, and a description of the property affected thereby. From the time of filing such notice for record only, shall a purchaser or encumbrancer of the property affected thereby be deemed to have constructive notice of the pendency of the action, and only of its pendency against parties designated by their real names.

7 GCA § 14103 (2012).

The lis pendens statute contains several technical requirements that a filing party must comply with to establish constructive notice to third parties. First, while the right to file a lis pendens is not purely limited to plaintiffs, defendants are limited to doing so alongside a filing of an answer that contains a claim for affirmative relief. See id. That is to say, a defendant's counterclaims can give rise to a valid lis pendens as well as a plaintiff's initial claims. Second, the time for a plaintiff to file a lis pendens is limited to the time of filing the complaint or afterwards, and the time for a defendant to file a lis pendens arising from a counterclaim is the time of filing the answer or afterwards. Id. Third, the lis pendens must contain the names of the parties to the litigation, and the object of the action or defense, and a description of the property affected thereby. Id. If these requirements are met, then the filing is a valid lis pendens.

In weighing whether the "Notice of Recordation of Further Fraudulent Transfers" meets the requirement of the lis pendens statute, the Court is struck by the document's title itself. Rather than an anodyne statement such as "Notice of Lis Pendens," which would literally give notice of a "pending suit," the very title of this document makes an accusation that properties have been fraudulently transferred. Looking to the body of the document, nowhere to be found is a notice of a lawsuit that is pending. There is mention of another lawsuit, In the Matter of the Guardianship of Radhi P. Hemlani, Special Proceedings, Case No. SP0195-11. But the Notice does not make any affirmative claim for relief, either in that lawsuit or any other. This is especially odd considering that one of the Defendants in this suit, PDHF, filed a complaint in federal court on November 21, 2012 against the two Plaintiffs in this suit. Def.'s Memorandum of Points and Authorities, p. 10. The federal action was initiated less than a month after the Notice was filed with the DLM, yet it was never mentioned, nor was the filing with the DLM delayed until the time of the filing of the federal complaint.

The Notice does contain several names and lot numbers, however. It mentions the Radhi Puran Trust and Radhi Hemlani by name. It also accused "Manu Melwani, Don Hemlani, and their aiders and abettors," of taking another step in a fraudulent scheme to enrich themselves with assets that were supposed to go to charity. Pl.'s Compl., Ex. 1. The Notice mentions lot numbers of real properties and persons the real properties were transferred to: Parmanand K. Melwani as receiving Lot No. 93, Tract No. 15105, Municipality of Tamuning; Jethmal K. Melwani as receiving Apartment No. 1103, Agana Beach Condominiums; and Padi Kelly Daryanani as receiving Apartment No. 1101, Agana Beach Condominiums. Id. But these persons are not named as defendants in any lawsuit seeking recovery of the real properties. The locations may not quite come across as "descriptions" of the property, but they are at least

detailed enough to enable a diligent potential buyer of any of the real estate to do further research.

When the <u>Rothman</u> court applied the <u>Silberg v. Anderson</u> test to determining whether a given document or statement was covered by the litigation privilege, it distinguished a communication whose content was related in some way to the subject matter of the litigation, on the one hand, with a communication in which the communicative act functioned as a necessary and useful step in the litigation process, on the other hand. <u>See</u> <u>Rothman v. Jackson</u>, 49 Cal.App4th 1134, 1146 (1996). The latter category would be properly covered by the litigation privilege, but the former category would not.

Using the <u>Rothman</u> court's approach, this Court concludes that in the present case, the communication at issue falls into the former category. That is to say, the content of the Notice does relate to contested properties (the three lots). The Notice names persons against whom the filers are litigating (Manu Melwani and Ishwar Hemlani). It also states the filers' theory of the underlying events (that Manu Melwani and Ishwar Hemlani were defrauding Radhi Hemlani and Radhi's Trust, unlawfully diverting the trust assets from charity). But these factual connections are not functional connections. The reason Vasudev Hemlani and PDHF give for filing the Notice was establish constructive notice and thus protect PDHF's claimed interest in the real property. But the document filed lacks most of the statutory requirements of a lis pendens. The Notice is in such non-conformance with the statute that it does not serve to put potential third parties on notice of a pending suit with an affirmative claim for relief, no pending suit being mentioned or even existing at the time of filing. The Notice lacks a functional relationship to any litigation that was pending at the time it was filed.

As the Notice of Further Fraudulent Transfers does not conform to the lis pendens statute, nor serve the functional purposes of communication related to litigation, the Court concludes that the Notice was not a lis pendens and is not covered by the litigation privilege.

## CONCLUSION

The Court concludes that the Notice of Recordation of Further Fraudulent Transfers was not a privileged act of petition under the Citizen Participation in Government Act. Since that is the case, the Court has no authority to issue sanctions under the Citizen Participation in Government Act. The Court also concludes that the Notice of Recordation of Further Fraudulent Transfers is not a lis pendens and is not covered by the litigation privilege. For the reasons set forth above, the Defendant's Motion for Summary Judgment is DENIED; the Defendant's Motion for Sanctions is DENIED; and the Defendant's Motion to Dismiss is DENIED.

**IT IS SO ORDERED:** _____MAY 1 2 2014_____.

_____
**HONORABLE ARTHUR R. BARCINAS**
**Judge, Superior Court of Guam**

SERVICE VIA COURT BOX
I acknowledge that a copy of the original hereto was placed in the court box of: _W. Mann;_
_R. Jacob; DMR_
Date: _5/12/14_ Time: _4:25p_

Deputy Clerk, Superior Court of Guam